IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re | Chapter 7 |
| ROBERT J. JOYNER, | Case No. 2:05-bk-23431 |
| Debtor. | |
| | Adversary No. 06-148 |
| | **MEMORANDUM DECISION** |
| ROBERT J. JOYNER, | |
| Plaintiff, | |
| v. | |
| EDUCATIONAL CREDIT | |
| MANAGEMENT CORPORATION, | |
| Defendant. | |

**I. INTRODUCTION**

The Plaintiff, Robert Joyner, filed his Complaint seeking to have certain debt excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) on January 27, 2006. The Defendant, Educational Credit Management Corporation ("ECMC"), filed its Answer on March 3, 2006. The Court conducted various pre-trial proceedings in the matter. The trial began on February 13, 2007 and was concluded on June 28, 2007.

The Plaintiff is seeking to have a debt discharged in the principal amount of $43,811.71, plus interest and collection costs accruing thereon. This Decision shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bank.P. 7052. The Court has jurisdiction over this matter, and this is a core proceeding. 28 U.S.C. §§ 1334 and 157 (West 2006).

## II. FACTUAL BACKGROUND

The Plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code on October 14, 2005 and received a discharge on February 12, 2006. On January 27, 2006, the Plaintiff filed his Complaint seeking a determination that his indebtedness to the Defendant was discharged under 11 U.S.C. § 523(a)(8). The Plaintiff seeks to discharge two student loans (the "Loans") owed to the Defendant, both disbursed on January 23, 2004,[1] and totaling approximately $43,811.71 as of December 20, 2006. Interest continues to accrue on said obligation, and the Defendant may have incurred costs with respect thereto.

The Plaintiff incurred the Loans when he attended DeVry Institute of Technology, where he received a bachelor's degree that qualified him to work in the semiconductor industry. The Plaintiff worked in said industry for a period of eight years, traveling extensively. When the Plaintiff and his wife divorced, the Plaintiff became a single parent and chose no longer to travel. As a result, the Plaintiff chose employment outside the semiconductor industry and now works as a commercial driver for a local company. The Plaintiff's compensation has been reduced, but his earnings remain substantial.

The Plaintiff's expenses have also changed over the years. The Plaintiff presented expert testimony on the first day of the trial, February 13, 2007, as to the Attention Deficit Disorder with Hyperactivity ("ADHD") of his minor son. The Plaintiff's witnesses, Richard and Colleen Peck, appeared telephonically. Ms. Peck, who utilized certain tests in her analysis, concluded that the Plaintiff's son had ADHD.[2] Mr. Peck, who is a therapist,

---

[1] The Plaintiff apparently obtained the Loans quite some time ago when he attended DeVry Institute of Technology. Loan Number 1 was a consolidation of other student loan obligations, with the amount of the consolidated loan being $18,277.61, a "disbursement date" of January 23, 2004, and a fixed interest rate of 4.3% per annum. Loan Number 2 was a consolidation of other student loans, with the amount of the consolidated loan being $23,891.84, a "disbursement date" of January 23, 2004, and a fixed interest rate of 4.3% per annum. The above notes have been endorsed and assigned to Educational Credit Management Corporation. The Debtor does not dispute these facts.

[2] Although Ms. Colleen Peck appeared telephonically, she did not have the son's medical reports or test results in front of her. Accordingly, she could only testify as to a vague

testified that the son had problems at school and home due to his ADHD.[3]  However, Mr. Peck testified that the child was then taking a new medication, and attended therapy, which had produced a marked improvement in his condition.  Id.  Mr. Peck testified that the Plaintiff did not need to be more involved with the son than he already was and that although the son knew Mr. Peck and was comfortable with him as his therapist, there was no prohibition against the child seeing a different medical professional.

When the trial resumed on June 28, 2007, the Plaintiff presented information to the Court concerning his financial condition such as tax returns and financial reports prepared by the Plaintiff.  The Plaintiff completed his Schedules I and J in 2005, at the time of his divorce.  He conceded that he was unable to earn his normal compensation because of the divorce proceedings.  Although the Debtor testified that the divorce decree was entered in January 2005, the proceedings apparently affected the Plaintiff's ability to earn compensation up to the date that he filed his bankruptcy petition.  At the time he filed his petition, the Plaintiff stated that his income was $1,820 monthly, and his expenses were $1,432.[4]  Thus, even in 2005, when he earned significantly less than he does now, the Plaintiff had disposable income of approximately $200 per month.

The Court concludes that in 2006, once the Plaintiff's situation had stabilized after the divorce, he earned $50,000.[5]  The Plaintiff's current projected take-home pay, as calculated from his current paystubs, places him on a pace to earn, in 2007, roughly the same amount as he did in 2006.[6]  His current employer provides a "cafeteria-style health plan,"

recollection of having tested the son.  As a result, Exhibit 2 was not admitted into evidence.

**3**  See also Plaintiff's Exhibit 3.

**4**  See Defendant's Exhibit A.

**5**  See Defendant's Exhibits D - G.

**6**  See Defendant's Exhibits Q, S.

3

which allows the Plaintiff to obtain the requisite medical care for his son at a reduced cost. The employer also provides life insurance at no cost to the Plaintiff.

The Plaintiff introduced into evidence a Cash Flow Report for May through June, 2007, which shows $310.37 in excess monthly income.[7] The 12-month Cash Flow Report submitted by the Plaintiff, however, shows a negative net income of $513.06.[8] However, the Plaintiff testified that he now has a housemate or roommate, which reduces his monthly rent and utility expenses. He is able to afford cable and high-speed internet service, which is provided in his budget, and he recently took a vacation.

Moreover, the Court concludes that the Plaintiff's financial condition will improve over time. The Plaintiff now supports only one, as opposed to two, children, because his daughter was emancipated in August, 2006.[9] The Plaintiff will continue to support his son, but such support is not indefinite, ending in seven years. Moreover, the Plaintiff is entitled to have his ex-wife provide reimbursement of a substantial portion of any medical expenses incurred. The Plaintiff has simply not pursued this alternative. The Plaintiff's son has stabilized under the current medical care that is being provided, and the Plaintiff has access to health insurance which will reduce these costs in the future. The son's medical expenses are burdensome to the Plaintiff, costing $85 per therapy session. However, if the Plaintiff utilizes the medical professionals that participate in the Plaintiff's health plan, the son's treatments will cost the Plaintiff the minimal co-pay amounts of $25 to $30 per session, dramatically reducing the Plaintiff's monthly expenses.

Additionally, the Plaintiff is currently paying for the son's orthodontics. This is now a fairly substantial expense, but will be paid off relatively soon, significantly reducing the Plaintiff's expenses. Although the Plaintiff and his ex-wife share responsibility for the

---

[7] See Plaintiff's Exhibit 7.

[8] See Plaintiff's Exhibit 10.

[9] See Defendant's Exhibit R.

4

orthodontic expense (each owes approximately $3,500), the ex-wife has not been contributing her portion of the payments, and owes approximately $1,600. The Plaintiff has recourse to the Maricopa County Superior Court to require the ex-wife to pay her portion of the costs, although he has not yet done so.

The Plaintiff has no current medical problems, and his prospects for current and future employment at his current salary are likely to change only favorably.

The Plaintiff has only made sporadic payments on his Loans. In 2004 and 2005, he paid the aggregate amount of $3,032.98.[10] The Plaintiff also did not take advantage of the William D. Ford Direct Loan Program.[11] If the Plaintiff had pursued such a course of action, he might have qualified for payments on his Loans as low as $221 per month.[12]

Finally, although the Plaintiff testified that he gives ten percent of his income to his church as a tithe, the evidence presented did not support that testimony. For example, the Defendant presented the Plaintiff's own evidence to show that the Plaintiff had tithed $467 in three months, $482 in six months, and only $587 in 12 months.[13] Thus, the Court concludes that the Plaintiff has no regular pattern of tithing, and in a year, the Plaintiff has only made contributions of $587 to his church.

### III. DISCUSSION

Student loans are excepted from a bankruptcy discharge, unless the loans impose an undue hardship on the debtor and his dependents. 11 U.S.C.§ 523(a)(8) (West 2005). The Ninth Circuit has adopted a three-part test to determine whether excepting a debtor's student loans from discharge imposes an undue hardship. See United Student Aid Funds v. Pena, 155 F.3d 1108 (9th Cir. 1998). Under the Pena test,

---

10 See Plaintiff's Exhibit 5.

11 See Defendant's Exhibit J.

12 See Defendant's Exhibits K-M.

13 See Plaintiff's Exhibits 7-10.

a debtor must establish: (1) he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) additional circumstances exist, indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. Id. at 1112. The debtor bears the burden of proving all three elements indicating undue hardship before a discharge, or even a partial discharge, of student loans will be granted. In re Rifino, 245 F.3d 1083, 1087-88 (9th Cir. 2001).

Student loans are not dischargeable upon a showing of mere "garden variety" hardship; and the Ninth Circuit has held that although a debtor may be struggling financially in the present, student loans will not be discharged if the debtor's financial troubles will ease in time. Rifino at 1089. Rather, the debtor must show that the "road to recovery is obstructed by the type of barrier that would lead the court to believe [the debtor] will lack the ability to repay for several years." In re Birrane, 287 B.R. 490, 497 (9th Cir. B.A.P. 2002). Good faith efforts at repayment must be shown by the debtor's "efforts to obtain employment, maximize income, and minimize expenses" in addition to ongoing attempts to negotiate a repayment plan with the lender. Id. at 500.

In the present case, with the Plaintiff's current income and appropriate changes to his expenses, the Court concludes that the Plaintiff is able to maintain an appropriate standard of living for himself and his dependents even if forced to repay the Loans. See Pena at 1112. Even in 2005, when the Plaintiff was earning some $20,000 less than he does now, and paying child support for two children rather than just one, the Plaintiff's Schedules reflected $200 of excess monthly income. Since that time, the Plaintiff's earnings have increased, and one of his children has been emancipated. Additionally, there is evidence that the Plaintiff's current expenses may be minimized. For example, the Plaintiff has the ability to take advantage of his health plan to reduce

6

dramatically his son's medical expenses.  Moreover, his ex-wife is responsible for a portion of these and other medical expenses, and the Plaintiff need only seek the assistance of the domestic relations court to assist him.  The Plaintiff's rent and utility payments have also been reduced by the Plaintiff's new roommate or housemate.  The Plaintiff's cash flow and monthly bills show that the Plaintiff has succeeded in maintaining at least a "minimal" standard of living.  For example, the Plaintiff has budgeted for cable television and high-speed internet service, and was recently able to take a vacation.  Although the Plaintiff may be experiencing "tight finances," this is not the sort of undue hardship contemplated by 11 U.S.C. § 523.  See Rifino at 1008 (quoting In re Nascimento, 241 B.R. 440, 445 (9th Cir. B.A.P. 1999)).

The Plaintiff has also failed to show, under the second prong of the Pena test, that his road to financial recovery is, and will continue to be, obstructed.  The Plaintiff's earnings have increased since 2005, and his child support payments have decreased.  Child support payments will be eliminated when the Plaintiff's son reaches the age of majority.  The son's orthodontics will soon be paid off as well, eliminating another expense for the Plaintiff; and, as noted, the Plaintiff has the right to recover some of this expense from his ex-wife, although he has not yet attempted to do so.  The Plaintiff has no personal medical condition  and presented no evidence that would indicate a reduced ability to retain employment in the future.  There is also no evidence that the Plaintiff's income will not increase over time.

Finally, the Plaintiff has not carried his burden of proof that he has made good faith efforts to repay his loans.  The Plaintiff did make payments on his loans in 2004 and 2005, totaling $3,032.98.[14]  Additionally, his efforts to maximize his income and maintain employment indicate some good faith.  See Birrane at 500.  However, as discussed supra, the Plaintiff has not minimized his expenses as required by Birrane. See Id.  Additionally, although he was provided with information regarding the William

---

**14**  See Plaintiff's Exhibit 5.

D. Ford Direct Loan Program, under which borrowers may negotiate payment deferments and reasonable monthly payments based on their income, the Plaintiff did not take advantage of the Program.[15]  Under this Program, the Plaintiff might have qualified for monthly payments as low as $221.[16]  The Plaintiff did not attempt a repayment under the Program, so has not satisfied the third prong of the <u>Pena</u> test.  <u>See</u> <u>Birrane</u> at 500.  Because the Plaintiff has been unable to meet the <u>Pena</u> test, the Court sees no ability to explore whether the Loans should be discharged in part.  <u>See</u> <u>In re Carnduff</u>, 367 B.R. 120, 131 (9th Cir. B.A.P. 2007); <u>In re Saxman</u>, 325 F.3d 1168, 1173-75 (9th Cir. 2003); <u>In re Myrvang</u>, 232 F.3d 1116 (9th Cir. 2000).

## IV. CONCLUSION

Although the Plaintiff has shown that his finances are tight, he has not borne the burden of proving the sort of undue hardship that would warrant discharge of his student loans.  The Plaintiff has failed to establish that (1) he cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependents if forced to repay the loans; (2) additional circumstances exist, indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that he made good faith efforts to repay the loans.  <u>United Student Aid Funds v. Pena</u>, 155 F.3d 1108, 1112 (9th Cir. 1998).  Rather, the Plaintiff's income has increased, and with appropriate changes to his expenses, the Plaintiff has the ability to repay his student loans over time.  Because of the Plaintiff's failure to meet the test under <u>Pena</u>, the Court also sees no ability to discharge the student loans in part.  <u>See</u> <u>In re Carnduff</u>, 367 B.R. 120, 131 (9th Cir. B.A.P. 2007); <u>In re Saxman</u>, 325 F.3d 1168, 1173-75 (9th Cir. 2003); <u>In re Myrvang</u>, 232 F.3d 1116 (9th Cir. 2000).

---

**15** <u>See</u> Defendant's Exhibit J.

**16** <u>See</u> Defendant's Exhibit K-M.

1

2         **DATED this  26th day of September, 2007.**

3

4

5                **Honorable Sarah Sharer Curley**

6                **United States Bankruptcy Judge**

7

BNC to notice.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9